IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

MICHAEL HEISKELL,                    )
Special Litigation Trustee           )
for Aerobotics Industries, Inc.,     )
FRANK CARBONE AND                    )
MICHAEL CARBONE,                     )
                                     )
                    Plaintiff,       )        **CIVIL ACTION**
                                     )
v.                                   )        No. 04-1202-MLB
                                     )
THE BOEING COMPANY,                  )
BOEING INTEGRATED DEFENSES           )
& SYSTEMS, BOEING COMMERCIAL         )
AIRPLANES, AND BOEING CAPITAL        )
CORPORATION,                         )
                                     )
                    Defendant.       )
_____)

## MEMORANDUM AND ORDER

Boeing has moved to dismiss Aerobotics' Fourth Amended Complaint in its entirety. (Docs. 3, 25, 26). The court heard oral argument on March 15, 2004. The complaint alleges fraud, breach of contract, business duress and economic compulsion, business disparagement, breach of fiduciary duty, breach of good faith and fair dealing, and RICO violations.

## I.   Choice of Law

Generally, a federal trial court sitting in diversity applies the forum state's choice of law. Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996). This case was transferred by the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1406(a). (Doc. 2.) Following a section 1406(a) transfer, the general rule applies and "the transferee court must apply the choice of law rules of the state

in which it sits." <u>Tel-Phonic Services, Inc. v. TBS Intern., Inc.</u>, 975 F.2d 1134, 1141 (5th Cir. 1992).

The parties drafted two different contracts in this case. The 737 contract has a choice of law provision that states "[e]ach Purchase Contract and/or Order, including all matters of construction, validity and performance, shall in all respects be governed by, and construed and enforced in accordance only with the law of the State of Kansas without reference to any rules governing conflicts of law . . ."[1] (Doc. 4, exh. 2 ¶ 18.0.) The Apache Contract provides that "[t]his Contract and the performance thereof shall be governed by the laws of the State of Washington, U.S.A." (Doc. 4, exh. 3 ¶ 31.)

Federal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules. <u>Altrutech, Inc. v. Hooper Holmes, Inc.</u>, 6 F.Supp.2d 1269, 1273 (D. Kan. 1998). Kansas courts generally give effect to such provisions if the forum selected bears a reasonable relation to the contract at issue and if the parties freely entered into the choice-of-law agreement. <u>See</u> <u>ORI, Inc.</u>, 147 F. Supp.2d at 1078 n. 9 (citing <u>National Equip. Rental, Ltd. v. Taylor</u>, 225 Kan. 58, 60, 587 P.2d 870, 873 (1978)). Both parties have agreed that the choice-of-law

---

[1] Defendants' attached both contracts to their motion to dismiss in order to establish the applicable law to all state claims. Usually, when a court relies on materials outside the complaint, the court converts the motion to dismiss into a motion for summary judgment. <u>Lamb v. Rizzo</u>, 391 F.3d 1133, 1136 (10th Cir. 2004). During oral argument, both parties requested that the court continue to treat the motion as a motion to dismiss and agreed that the choice of law provisions in the contract controlled.

The parties also agreed that their submissions directed to the Third Amended Complaint (Docs. 4, 22 and 25) may be applied to the proposed Fourth Amended Complaint (Doc. 28).

provisions in the contracts apply to all contract disputes and do not argue that the forum is unreasonable or that either party entered the agreement unwillingly.  Therefore, Kansas law will apply to the 737 contract and Washington law will apply to the Apache contract.

As for plaintiff's fraud and deceit claims, the Kansas Supreme Court has held that the law of the state where the tort occurs controls.  See Carolina Indus. Products, Inc. v. Learjet, Inc., 2001 WL 1636547, *9 n. 12 (D. Kan. Dec. 18, 2001)(citing Ling v. Jan's Liquors, 237 Kan. 629, 635, 703 P.2d 731, 735 (1985)); Audiotext Communications Network, Inc. v. US Telecom, Inc., 912 F. Supp. 469, *473 (D. Kan. 1995)(a choice of law provision that stated the "construction, interpretation, and performance of this Agreement shall be governed by the laws of the State of Kansas" only controlled the breach of contract claims and not the tort claims).  Under this rule, the tort is deemed to have occurred where the wrong was felt.  See Ling, 237 Kan. at 635.

Defendant asserts that Kansas choice of law rules would apply the contract provision to the corresponding tort claims and cites a case from this district for that proposition.  However, Chief Judge Lungstrum held that Kansas has not established that a choice of law provision in a contract applied to the parties' tort claims.  Abbott v. Chemical Trust, 2001 WL 492388 (D. Kan. Apr. 26, 2001).  Rather, he determined that the plaintiffs failed to address the choice of law issue and, therefore, acquiesced to the application of Kansas law to their tort claims.  In this case, plaintiff has stated that he will accept defendants' analysis of the choice of law "without waving its right to further examine and challenge Defendants' conflicts of law

-3-

analysis as the case proceeds." (Doc. 22 at 4.) Plaintiff again asserted during oral argument that the choice-of-law provision in each contract would also control the tort claims, but only for the purposes of the present motion. The court is not sure what plaintiff has in mind but inasmuch as the court is able to extract the tort claims that relate to the separate contracts, all tort claims relating to the 737 contract will apply Kansas law and the claims relating to the Apache contract will apply Washington law.

## II.  Motion to Dismiss Standards: FRCP 12(b)(6)

The standards this court must utilize upon a motion to dismiss are well known. This court will dismiss a cause of action for a failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle legal relief or when an issue of law is dispositive. See Ford v. West, 222 F.3d 767, 771 (10th Cir. 2000); Robinson v. Kansas, 117 F. Supp.2d 1124, 1129 (D. Kan. 2000). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff. See Ford, 222 F.3d at 771; Davis v. United Student Aid Funds, Inc., 45 F. Supp.2d 1104, 1106 (D. Kan. 1998). Conclusory allegations, however, have no bearing upon this court's consideration. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based"); Overton v. United States, 74 F. Supp. 2d 1034, 1041 (D. N.M. 1999) (citing Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989)). In the end, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his

-4-

claims.  <u>See</u> <u>Robinson</u>, 117 F. Supp.2d at 1129.

## III. ANALYSIS

### A.    Aerobotics Lacks Standing

Defendants have conceded that the addition of the bankruptcy trustee to the Fourth Amended Complaint has cured this defect.

### B.    The Carbones Lack Standing

The complaint alleges that the Carbones are suing in their own right.  (Doc. 28 ¶¶ 4, 5.)  Defendants assert that the Carbones, as former shareholders of Aerobiotics, cannot bring a nonderivative action.  (Doc. 4 at 6-7.)  The Carbones respond by asserting that they has alleged sufficient facts to establish a Hobbs Act violation, i.e. threats, extortion, duress, and fearmongering.  (Doc. 22 at 3.)

Aerobotics was incorporated in the state of Texas and, under Texas law, a shareholder may bring suit "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder." <u>Wingate v. Hajdick</u>, 795 S.W.2d 717, 719 (Tex. 1990); <u>Comeau v. Rupp</u>, 810 F. Supp. 1127, 1153 (D. Kan. 1992)(same rule applies under Kansas law).  But no private right of action exists for a Hobbs Act violation.[2]  <u>Wisdom v. First Midwest Bank of Poplar</u>

---

[2]    During oral argument, the court questioned plaintiff extensively regarding this allegation.  Plaintiff insisted that the complaint sufficiently alleged a Hobbs Act violation suffered by the Carbones.  Even if a private right of action existed, for which plaintiff provided no authority, plaintiff's claim fails as a matter of law.
    The Hobbs Act allows criminal prosecution when a person has "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by . . . extortion or attempt[ed] or conspire[d] so to do, or commit[ted] or threaten[ed] physical violence to any person or property in furtherance of a plan or purpose to do [so]." 18 U.S.C. § 1951.  "Extortion" is defined in the Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or

<u>Bluff</u>, 167 F.3d 402, 408-09 (8th Cir. 1999); <u>Creech v. Federal Land</u> <u>Bank of Wichita</u>, 647 F.Supp. 1097, 1099 (D. Colo. 1986).

Accordingly, the Carbones lack standing and are dismissed from the action.

### C.   Fraud

Defendants assert that dismissal of the fraud claims is warranted under Fed. R. Civ. P. 9(b), which provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The purpose of this rule is to provide a defendant with fair notice of any fraud claim and the factual grounds upon which those claims are based. <u>Koch v. Koch Indus., Inc.</u>, 203 F.3d 1202, 1236 (10th Cir. 2000). This heightened form of pleading, however, must be balanced with the requirements of Rule 8 for "simple, concise, and direct" pleadings. <u>Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d 1246, 1252 (10th Cir. 1997). Significantly, Rule 9(b) does not raise the required level of pleading to fact pleading; it is still a form of notice pleading. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 410 (1969); <u>see also</u> <u>Bennett v. Schmidt</u>, 153 F.3d 516, 517 (7th Cir. 1998). To provide adequate notice, a plaintiff must provide the

---

fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The Carbones have only alleged that Boeing has obtained <u>Aerobotics</u> property and not that of the Carbones individually. Moreover, plaintiff has failed to plead that Boeing threatened physical violence to the Carbones in furtherance of a plan to obtain their individual property. Boeing threatened that the Carbones would never get any work from Boeing again. (Doc. 28 ¶ 31.) In sum, Boeing's actions, as a matter of law, do not rise to the level of a threat or extortion within the meaning of the Hobbs Act.

"time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." <u>Lawrence Nat'l Bank v. Edmonds (In re Edmonds)</u>, 924 F.2d 176, 180 (10th Cir. 1991). Stated differently, a plaintiff must set forth the "who, what, where, and when" of the fraud claim. <u>Plastic Packaging Corp. v. Sun Chemical Corp.</u>, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001) (citations omitted).

Plaintiff has alleged nine instances of fraud.[3] (Doc. 30 at 1-2.) The first instance is that when Boeing solicited bids for the manufacture of parts for the Apache, "Boeing failed to disclose technical data revealing warped raw material billets." Plaintiff asserts that Boeing-Philadelphia had documents in its possession at the time the Apache contract was awarded to Aerobotics in 1998, but did not disclose the documents and concealed the information. Plaintiff contends that Aerobotics was induced into submitting a manufacturing plan that provided for 50% less operations than what had previously been successful. (Doc. 28 ¶¶ 58 and 91.) Under Washington law, "[w]hen the law imposes a duty on one party to disclose all material facts known to him and not known to the other, silence or concealment in violation of this duty with intent to deceive will amount to fraud as being a deliberate suppression of the truth and equivalent to the assertion of a falsehood." <u>Oates v. Taylor</u>, 199

---

[3] Both the third and proposed fourth amended complaints are quite prolix. Therefore, on January 13, 2005, the court requested that plaintiff supplement his response brief to specifically reference allegations in his complaint that support plaintiff's claims. (Doc. 29.) Plaintiff responded by letter on January 18, 2005. (Doc. 30.) The court has relied heavily on the letter in its effort to correlate the allegations of the complaints with the respective claims.

P.2d 924, 927 (Wash. 1948).

Plaintiff's second allegation is that "Boeing attempted to hide the material warping by changing the material standards to disguise the warping." (Doc. 30 at 1.)  In this allegation, which also applies to the Apache, plaintiff specifies that Boeing engineers manipulated the datum plane so that the parts could pass inspection.  (Doc. 28 ¶ 50.)

Plaintiff's third contention is basically a restatement of his first claim.

Plaintiff's fourth contention is that "Boeing withheld technical data on the nacelle webs on the 737 to hide the inadequacy of the material to manufacture the part." (Doc. 30 at 1.)  Under Kansas law, in order to state a claim for fraud by silence, a plaintiff must plead that a defendant has suppressed or concealed facts which it was under a legal or equitable duty to communicate. <u>DuShane v. Union Nat. Bank</u>, 223 Kan. 775, 760, 576 P.2d 674, 679 (1978).  Plaintiff makes general allegations that the machining process had inherent problems that were concealed from Aerobotics during the bidding process, i.e. the flatness requirement for finished parts was .015 inches per linear foot, but the raw material had deviations up to .500 inches per linear foot.  (Doc. 28 ¶ 56.)

Although the court has some reservations regarding Boeing's duty in connection with plaintiff's fourth claim, it finds that plaintiff has sufficiently pleaded a cause of action for fraudulent failure to disclose in each of these four claims.  The remaining claims, however, are insufficient.

Plaintiff's fifth contention is that "Boeing procurement managers

-8-

misrepresented changes to purchase orders." (Doc. 30 at 1.) Under
Kansas law, "[w]here a plaintiff seeks to recover because of the fraud
of the defendants, based upon false representations, it is incumbent
upon him to allege and prove what representations were made, that they
were false, that he believed them to be true, and that he relied and
acted upon them to his detriment." Minnesota Ave., Inc. v. Automatic
Packagers, Inc., 211 Kan. 461, 466, 507 P.2d 268, 272 (1973). The
complaint states that the managers "refused to accurately reflect
engineering, manufacturing and schedule changes to purchase orders,"
which affected the amount that Aerobotics was paid under the contract
and its performance requirements. (Doc. 28 ¶ 60.) However, the
complaint lacks any allegation that the inaccurate purchase orders
were relied on by Aerobotics. It also lacks any allegation that
Boeing stated the changes would be made and were not made. Moreover,
the allegation lacks the who, where and when requirements of
heightened pleading.

Plaintiff's sixth contention is that Boeing failed to disclose
the dysfunctional corporate relationship between Mesa engineers and
Boeing-Philadelphia manufacturers of the Apache fuselage. However,
the complaint does not allege that Boeing failed to disclose the
relationship, as required by Washington law, but rather that the
dysfunctional relationship caused problems and financial harm. (Doc.
28 ¶ 53.)

Plaintiff's seventh contention is that Boeing agreed in writing
to release funds to plaintiffs but then reneged. (Doc. 28 ¶ 75.2.)
Plaintiff alleges that Lauren Pearce executed a written agreement with
Aerobotics. The heightened pleading standards seem to be met for this

-9-

allegation. However, the complaint lacks any allegation that at the time the agreement was made Pearce knew that it was false. Rather, the allegation is that Donna Bodgen abrogated Pearce's commitment and the allegation fails to state a claim. Thus, plaintiff has wholly failed to allege that there was any false statement.

Plaintiff's eighth contention is that Boeing's representation that it would settle up later was fraudulent. (Doc. 28 ¶ 42.) However, plaintiff has failed to allege when this statement was made and who made it. "In the context of corporate defendants, plaintiffs must identify the specific individuals who made the alleged misrepresentations." <u>Gottstein v. National Ass'n for Self Employed</u>, 53 F.Supp.2d 1212, 1218 (D. Kan. 1999).

Plaintiff's final contentions also fail to plead the fraud with particularity. There are no specifics - they are all general allegations of tactics Boeing used. (Doc. 28 ¶¶ 64-65.)

In sum, the only claims that satisfy rule 9(b) are plaintiff's contentions 1 through 4 regarding Boeing's failure to disclose information prior to consummation of the 737 and Apache contracts. All other claims of fraud are dismissed.

   **D.  Heightened pleading of predicate RICO acts**[4]

---

[4] Plaintiff's complaint appears to set out claims for substantive violations of the Hobbs Act, mail and wire fraud, and Interstate Travel in Aid of Racketeering Enterprise. (Doc. 28 at 53.) Inasmuch as the complaint may attempt to allege substantive claims, rather than just predicate acts to support a civil RICO action, they are dismissed. No private action exists for these supposed criminal acts. <u>See</u> <u>Wisdom</u>, 167 F.3d at 408-409 (Hobbs Act and mail and wire fraud); <u>Bajorat v. Columbia-Breckenridge Development Corp.</u>, 944 F. Supp. 1371, 1377 (N.D. Ill. 1996)(ITARE). Rarely is there a private right of action under a criminal statute. <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 316, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979).

Plaintiff must plead allegations of mail and wire fraud with particularity. <u>Ad-X Intern., Inc. v. Kolbjornsen</u>, 2004 WL 887354, *1 (10th Cir. Apr. 27, 2004)(citing <u>Cayman Exploration Corp. v. United Gas Pipe Line Co.</u>, 873 F.2d 1357, 1362 (10th Cir. 1989)). Plaintiff has made seven allegations of mail and wire fraud. (Doc. 30 at 2.) None of the allegations is sufficient to state a claim.

Plaintiff first asserts that in a January 18 letter, contacts between Boeing agents and Aerobiotics were made using the U.S. mails and email. (Doc. 30 at 2.) However, the complaint lacks any detail of mail and wire fraud. (Doc. 28 ¶ 31.) There are no specifics as to when the alleged fraud occurred or how Boeing used the mail and/or email to engage in fraud.[5]

The second alleged instance of fraud concerns emails sent by Bob Nordin. The complaint specifies that the memo was internal and does not allege that the memo was even sent to Aerobotics. (Doc. 28 ¶¶ 49, 68.) Furthermore, the memo stated that "the changes to HS-217 had made a large difference in the manufacturing of these parts." (Doc. 28 ¶ 49.) Plaintiff only alleges that the changes were not the recommended way to handle the problem, not that the changes hadn't made a difference. The court fails to see how this statement was fraudulent.

Third, plaintiff asserts in the January 18 letter, Jim Conroy

---

[5] At oral argument, plaintiff's counsel stated that this case began as a qui tam action and that Boeing was quite aware of the several hundred examples of mail and email usage. Boeing's counsel responded that Boeing had never seen the documents submitted as part of the qui tam action. Plaintiff's counsel confirmed this to be true. When the court inquired of plaintiff's counsel whether he wished to attach the documents to his client's submission and convert to summary judgment, counsel declined.

mailed copies of datum planes to Aerobotics.  The complaint itself fails to allege that the U.S. mails or wires were used to transmit these copies.  (Doc. 28 ¶ 50.)

Fourth, plaintiff argues that Robert Koeningsman made representations about defective parts in telephone and email communications.  However, the complaint alleges that Mr. Koeningsman continually told plaintiff "[t]his is your problem.  You fix it." (Doc. 28 ¶ 67).  The complaint fails to allege how this statement was fraudulent.

Fifth, plaintiff asserts that Boeing agents communicated by mail and email prior to a meeting held in Texas.  The complaint itself does not support this assertion.  (Doc. 28 ¶ 72.)  But assuming there was communication by mail and email, paragraph 72 does not allege fraud.

Sixth, plaintiff argues that communications between Pearce and Bogden occurred over the wires and by mail.  However, the court has previously determined, <u>supra</u> at p. 9-10, that plaintiff has failed to allege those communications contained false statements.

Seventh, plaintiff alleges that Boeing disseminated confidential financial information by mail and email internally.  (Doc. 28 ¶ 85.) However, plaintiff has not alleged that the information was false. The allegation is that the negative rating was published internally even though Boeing knew that they contributed to Aerobotics' decline. Plaintiff has not alleged that a false statement was transmitted by wire or mail as required by 18 U.S.C. §§ 1341 and 1343.

In sum, plaintiff's complaint falls far short of the heightened pleading standard required by Fed. R. Civ. P. 9(b) for predicate RICO acts.

**E.    RICO**[6]

To state a RICO claim under 1962(b), plaintiff must establish that a person 1) through a pattern 2) of racketeering activity 3) acquire[d] or maintain[ed] any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. 18 U.S.C. § 1962(b). "Pattern of racketeering activity" has been defined as mail and wire fraud, Hobbs Act violations and Interstate Travel in Aid of Racketeering Enterprises (ITARE). 18 U.S.C. § 1961. Since the mail and wire fraud claims have been disposed of, the court must consider whether the Hobbs Act and ITARE allegations sufficiently state a pattern of racketeering activity.    A pattern of racketeering activity must include commission of at least <u>two</u> predicate acts. <u>Resolution Trust Corp. v. Stone</u>, 998 F.2d 1534, 1543 (10th Cir. 1993).

A plaintiff claiming a Hobbs Act violation, 18 U.S.C. § 1951, must establish that the defendant "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by . . . extortion or attempt[ed] or conspire[d] so to do, or commit[ted] or threaten[ed] physical violence to any person or property in furtherance of a plan or purpose to do [so]." 18 U.S.C.

---

[6]  18 U.S.C. § 1962 (civil RICO) provides four different substantive provisions. In his Fourth Amended Complaint, plaintiff does not clarify the provision(s) that supports their allegations. <u>See</u> Doc. 28 ¶ 5. Defendants surmised that plaintiff was alleging a claim under both subsection (b) and (c). (Doc. 4 at 13.) Plaintiff has not disputed this assumption nor offered any argument to the contrary.  (Doc. 22 at 3-5.)  Moreover, during oral argument, plaintiff did not take the position that his complaint alleged a cause of action under subsection (a) or (d).  Therefore, the court will address the viability of plaintiff's claims under subsection (b) and (c).

-13-

§ 1951. "Extortion" is defined in the Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The term "fear" has been found to include the fear of economic loss. Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 522 (3d Cir. 1998). However, "hard bargaining" in an ordinary commercial relationship will not support a RICO claim based on extortion. Center Cadillac, Inc. v. Bank Leumi Trust Co., 859 F. Supp. 97, 105 (S.D.N.Y.), aff'd, 99 F.3d 401 (2d Cir. 1995).

Plaintiff has identified three allegations of Hobbs Act violations. (Doc. 30 at 2-3.) First, plaintiff alleges that the withholding of funds by Boeing to force Aerobotics into an unreasonable settlement was extortion. (Doc. 28 ¶¶ 73-79.) Plaintiff alleges that Aerobotics was in a precarious financial situation created by Boeing and that Boeing withheld Aerobotics' funds until Aerobotics released all claims against Boeing. This allegation does not state not state a predicate Hobbs Act violation because there is no allegation of threat of violence.

Second, plaintiff asserts that Boeing violated the Hobbs Act by blackballing Aerobotics within the various Boeing branches. (Doc. 28 ¶¶ 78-80.) This allegation fails to state a Hobbs Act violation for the same reason. In addition, any result of Aerobotics being "blackballed" did not include Boeing obtaining property from Aerobotics.

Third, plaintiff asserts that Boeing disseminated false and confidential information about Aerobotics. Again, this fails to state

-14-

a Hobbs Act violation since Boeing did not obtain property from Aerobotics by fear or threat as required by the statute.

Plaintiff further alleges that Boeing used interstate travel to further its racketeering activities, i.e. extortion. (Doc. 28 ¶ 94.) On the date that Boeing supposedly forced Aerobotics to settle its claim against Boeing, the Carbones traveled interstate to Boeing's place of business. (Doc. 28 ¶¶ 73-79.) The remaining ITARE allegations do not correlate with the commission of an unlawful activity as required by 18 U.S.C. § 1952. (Doc. 28 ¶¶ 31, 50, 68, 72.) As a matter of law, plaintiff has not plead an ITARE violation.

In summary, plaintiff cannot sufficiently state a RICO claim under 1962(b) since he has failed to establish a pattern of racketeering activity. A pattern of racketeering activity must include commission of at least <u>two</u> predicate acts. <u>Resolution Trust Corp. v. Stone</u>, 998 F.2d 1534, 1543 (10th Cir. 1993). Moreover, plaintiff has failed to allege facts showing sufficient continuity. To establish continuity, "the plaintiff must demonstrate either a closed period of repeated conduct or past conduct that by its nature projects into the future with a threat of repetition." <u>SIL-FLO, Inc. v. SFHC, Inc.</u>, 917 F.2d 1507, 1516 (10th Cir. 1990). Plaintiff has completely failed to allege any threat of future illegal activity in the Fourth Amended Complaint. "At most, what has been alleged is a business deal gone sour." <u>Id.</u>

To state a RICO claim under 1962(c), plaintiff must allege "four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Robbins v. Wilkie</u>, 300 F.3d 1208, 1210 (10th Cir. 2002) (quoting <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479,

-15-

496, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985)).  This claim also fails
for the lack of allegation of a pattern and continuity.

It appears that plaintiff's claims are nothing more than a
reformation of his state law claims as RICO violations.  Defendant's
motion to dismiss plaintiff's RICO claims is GRANTED.

**F.    Breach of Contract**

To state a claim for breach of contract under Kansas law,
plaintiff must allege  "(1) the existence of a contract between the
parties; (2) consideration; (3) the plaintiff's performance or
willingness to perform in compliance with the contract; (4)
defendant's breach of the contract; and (5) that plaintiff was damaged
by the breach." Britvic Soft Drinks Ltd. v. Acsis Techs., Inc., 265
F. Supp.2d 1179, 1187 (D. Kan. 2003).  Similarly, Washington law
requires a valid contract between the two parties, a breach and that
the breach caused damages to Aerobotics.  Lehrer v. State of
Washington, 101 Wash. App. 509, 5 P.3d 722, 727 (2000).

Defendants argue that plaintiff has failed to identify how Boeing
breached any specific terms of the contract.  (Doc. 4 at 25.)
Plaintiff responds by arguing that he is not required to allege that
a specific term has been breached since his allegation only asserts
that Boeing breached the implied duty for one party not to frustrate,
obstruct, hinder, or prevent the performance of the other.  (Doc. 22
at 12.)  Plaintiff has not cited any Kansas or Washington law which
supports this proposition.  Since plaintiff has failed to support his
argument with case law, the breach of contract claim is subject to
dismissal.  See Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 800
(10th Cir. 2001)(the court is under no obligation to perform legal

-16-

research).

Even had plaintiff supported his argument, he has not adequately plead a breach of implied duty. "In order to prevail on an implied duty of good faith and fair dealing theory under Kansas law, plaintiff must (1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term in the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term." Wayman v. Amoco Oil Co., 923 F. Supp. 1322, 1359 (D. Kan. 1996), aff'd, 1998 WL 177857 (10th Cir. April 16, 1998)(emphasis supplied). Plaintiff has failed to point to a specific term in the contract that was breached by Boeing, even though he has been given multiple opportunities to do so. Defendant's motion to dismiss plaintiff's breach of contract claim is GRANTED.

### G.    Business Duress and Economic Compulsion

The elements of economic duress are: (1) a wrongful act or improper threat; (2) the absence of a reasonable alternative to enter the agreement; and (3) the lack of free will. Comeau v. Mt. Carmel Medical Ctr., 869 F. Supp. 858, 865-866 (D. Kan. 1994). Plaintiff has identified three allegations to support his claim for duress. (Doc. 30 at 3-4.) Plaintiff's allegations that Boeing blackballed Aerobotics and disseminated false information cannot be a basis for economic duress.[7]   Even though plaintiff may consider these to be  wrongful acts, there was no evidence of an agreement.  It was simply

---

[7] Both parties agreed that when the court is unable to discern whether the allegations concerned a specific contract, Kansas law applies.  Since the court cannot conclude whether these allegations flowed from the Apache contract, the court has applied Kansas law.

-17-

unilateral.  Therefore, those allegations fail as a matter of law to state a business duress or economic compulsion claim.

Plaintiff also asserts that Boeing forced Aerobotics into a settlement for its claims relating to the 737 contract "under duress." Defendants respond that this claim fails since being in a financially damaged position cannot constitute business duress or economic compulsion.  (Doc. 4 at 17.)  Usually, when one is faced with a settlement that is unacceptable, the effective way to protest is to decline the offer.  Plaintiff claims that Aerobotics could not decline since it had released checks to its suppliers and it would greatly harm its business if the checks bounced.  (Doc. 28 ¶ 75.4.) The Kansas Supreme Court has stated that "[p]hysical weakness or mental worry alone, are not sufficient to avoid a settlement . . . ; neither are financial distress nor threat or fear of litigation alone sufficient to avoid a release."  <u>Evans v. Aylward</u>, 166 Kan. 306, 316 (Kan. 1949).

Nevertheless, the court must consider whether Aerobotics had any reasonable alternatives, "whether or not the plaintiff actually considered such alternatives, and it is the party asserting duress who must show why there was an absence of such alternatives in order to avoid a contract because of economic duress."  <u>Comeau</u>, 869 F. Supp. at 865 (D. Kan. 1994).  By construing all allegations as true, plaintiff has pleaded sufficient facts to constitute a claim for business duress or economic compulsion.  However, in order to survive a motion for summary judgment, plaintiff must produce sufficient evidence to establish that Aerobotics lacked any reasonable alternative.

**H.   Business Disparagement (Defamation)**

-18-

Under Kansas law, a defamation claim requires "false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed." Hall v. Kansas Farm Bureau, 274 Kan. 263, 276, 50 P.3d 495, 504 (2002). Plaintiff concedes that most of his statements attributed to Boeing have not been alleged to be false. Nevertheless, plaintiff asserts that Boeing's internal rating system reflected false recording pertaining to Aerobotics quality of work and reliability.[8] (Doc. 28 ¶ 82.) The ratings were published in a report produced by the "Supplier Performance Measurement System" and available to Boeing employees and other suppliers. (Doc. 28 ¶ 84.) Plaintiff has further alleged that the false ratings harmed Aerobotics. Once again, out of an abundance of caution, the court finds that plaintiff has sufficiently stated a claim for business disparagement under Kansas law.

**I.   Breach of Fiduciary Duty**

Plaintiff asserts that Boeing owed a fiduciary duty to Aerobotics and that duty was breached. Boeing denies that its relationship with Aerobotics created a fiduciary duty under Kansas law. "[T]here are two types of fiduciary relationships: (1) those specifically created by contract such as principal and agent, attorney and client, and trustee and cestui que trust, for example, and those created by formal

---

[8] Defendants respond that this claim fails as a matter of law since plaintiff has alleged that there is "no mechanism to determine its accuracy" and, as such, is only a matter of Boeing's opinion. (Doc. 28 ¶ 84.) This allegation appears to be focused on the actual rating, but plaintiff has clearly identified that false data was used to determine the rating. In order to survive a subsequent motion for summary judgment, plaintiff must establish that the ratings and data used were not just Boeing's opinions and that publication to a third person occurred.

-19-

legal proceedings such as guardian and/or conservator and ward, and executor or administrator of an estate, among others, and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." Denison State Bank v. Madeira, 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982). Plaintiff asserts that the second type is applicable since the relationship was one of confidence and Boeing was in a position of superiority. "There is no invariable rule which determines the existence of a fiduciary relationship, but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other." Id. at 692. Boeing counters that an ordinary buyer/seller (commercial) relationship does not create a fiduciary duty because the parties are dealing at arm's length. Ritchie Enterprises v. Honeywell Bull, Inc., 730 F. Supp. 1041, 1053 (D. Kan. 1990).

In this case, plaintiff has alleged that the relationship was more than an arm's length transaction. Boeing supposedly took Aerobotics under its wing while Aerobotics was a new company and encouraged Aerobotics to build a bigger plant in order to become a key supplier for Boeing. (Doc. 22 ¶ 31.) These allegations are sufficient to survive a motion to dismiss. However, in a subsequent motion for summary judgment plaintiff must have adequate evidentiary support to demonstrate that the relationship with Boeing was more than an ordinary commercial transaction.

**J.    Breach of the Duty of Good Faith and Fair Dealing**

This claim must be dismissed since Kansas "does not recognize a tort for breach of the implied covenant of good faith and fair dealing . . . in a commercial contract setting." <u>Wayman</u>, 923 F. Supp. at 1359.  Inasmuch as the Fourth Amended Complaint alleges an action in contract for breach of the duty of good faith and fair dealing, it must also be dismissed.  <u>See</u> p. 16-17, <u>supra</u>.

**K.    Boeing Capital Corporation**

Defendant argues that BCC should be dismissed since plaintiff failed to make any allegations against it.  In the Fourth Amended Complaint, plaintiff has alleged that BCC was involved in the alleged business duress.  Since plaintiff has alleged facts upon which relief may be granted as to BCC, the motion to dismiss BCC must be DENIED.

**IV.  CONCLUSION**

Plaintiff has been given four opportunities to amend his complaint and support his position with authority.  Plaintiff also has been given two additional opportunities -- to file a supplemental brief to his response brief and oral argument.  The court will not continue searching the 58-page Fourth Amended Complaint to find allegations which support plaintiff's claims.  Enough is enough.

In sum, defendants' motion to dismiss is GRANTED in part and DENIED in part.  The Carbones are dismissed.  The only remaining viable fraud claims are the allegations of Boeing's fraudulent omissions.  The RICO claims are dismissed, the breach of contract claim is dismissed and the breach of the duty of good faith and fair dealing is dismissed.  The court has denied defendant's motion to dismiss the claims for business duress, economic compulsion, business

disparagement, breach of fiduciary duty and the motion to dismiss defendant BCC.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.


IT IS SO ORDERED.

Dated this 19th day of April 2005, at Wichita, Kansas.


                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE

-22-